UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TASHEBA BARNETT, *et al.*,

        Plaintiffs,

                      Case No. 1:22-cv-544
v.                      JUDGE DOUGLAS R. COLE

THE KROGER COMPANY, *et al.*,

        Defendants.

**OPINION AND ORDER**

Plaintiffs Tasheba Barnett, Adele Hoffman, and Chadaela Lovincey bought various flavors of a product they call "Simple Truth Organic Rice Rusks Baby Teething Wafer" and fed them to their children. (Doc. 1, #14–16). They now believe the wafers they bought contained elevated levels of toxic metals like lead, cadmium, mercury, and arsenic. So they sued The Kroger Co., Harris Teeter LLC, Harris Teeter Supermarkets, Inc., and Fred Meyer, Inc. (the Grocery Stores) themselves and on behalf of a yet-to-be-proposed class, claiming that Defendants should have warned of these contaminants and seeking damages and injunctive relief. The Grocery Stores moved to dismiss. (Doc. 19). For the reasons below, the Court **GRANTS** the Grocery Stores' Motion to Dismiss (*id.*) but **WITHOUT PREJUDICE**.

**BACKGROUND**

The allegations are straightforward. Plaintiffs bought store-brand wafers at the Grocery Stores and fed them to their children. (Doc. 1, #14–16). According to

Plaintiffs, those wafers contained "elevated" arsenic, lead, cadmium, and mercury levels. (*Id.* at #13). Plaintiffs also claim they were unaware of the elevated levels of those metals and state that they would not have purchased the product had they known of them. (*Id.* at #15–16). They blame the Grocery Stores for "false and misleading claims and omissions," essentially claiming that the Grocery Stores' failure to disclose the heavy metals' presence swindled Plaintiffs into buying the wafers. (*Id.* at #15).

The allegations seem to grow out of a February 4, 2021, report of a subcommittee of the U.S. House of Representatives that, according to Plaintiffs, revealed that the Grocery Stores and others were "knowingly concealing dangerous levels of contamination … in the production of their baby food products." (*Id.* at #9). The Grocery Stores disagree, believing that the subcommittee report flagged "naturally occurring trace amounts of heavy metals in … certain baby and toddler foods." (Doc. 19, #93). And the Grocery Stores note the FDA's reassurances that families "should not 'throw out their supply'" of baby food in response to the news. (*Id.* at #94).

The "Simple Truth" brand of wafers at issue here is not included in the subcommittee report. But Plaintiffs cite "[i]ndependent laboratory testing" to support their conclusions that the heavy metal levels in this product are too high. (Doc. 1, #13). Notably, Plaintiffs do not provide the actual test results, nor do they list who conducted the testing or when they conducted it.

2

At any rate, Plaintiffs sued in September 2022, purporting to raise six claims for relief against the Grocery Stores. These include: (1) breach of implied warranty under common law; (2) breach of implied warranty under the Magnuson-Moss Warranty Act; (3) unjust enrichment/restitution; (4) violation of the Texas Deceptive Trade Practices and Consumer Protection Act (TDTPA); (5) violation of the Indiana Deceptive Consumer Sales Act (IDCSA); and (6) violation of the Washington Consumer Protection Act (WCPA). (Doc. 1, #16–25). The Grocery Stores responded by moving to dismiss all claims under Rule 12(b)(6) on the ground that the Complaint fails to state a claim.[1] (Doc. 19, #81). The matter is now ripe for review.

## LEGAL STANDARDS

A complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citation omitted). Accordingly, plaintiffs "must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* In making that assessment, the Court must construe the complaint in a light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[1] While the Grocery Stores only cite Rule 12(b)(6), they also seek dismissal on standing grounds. Because standing goes to subject-matter jurisdiction, the Grocery Stores would more properly press this argument under Rule 12(b)(1). But as discussed below, because the Court dismisses the Complaint, the Court declines to reach the standing arguments presented here. If Plaintiffs seek to amend, though, and should the Grocery Stores respond by again raising their standing concerns, they should expound on their arguments under Rule 12(b)(1).

Thus construed, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face," *Iqbal*, 556 U.S. at 678.

## LAW AND ANALYSIS

The Grocery Stores ask the Court to dismiss all six of Plaintiffs' claims for various reasons. But before diving into their arguments, an initial bit of housekeeping. Plaintiffs note in their opposition to the Motion that they no longer wish to pursue Count II of the Complaint, the Magnuson-Moss Warranty Act claim. (Doc. 21, #167 n.11). So the Court will dismiss that claim. And with that out of the way, the Court turns to the arguments that the Grocery Stores press against the five remaining counts.

The Court starts with the Grocery Stores' argument that the Court should dismiss the entire Complaint because the FDA has primary jurisdiction over baby food safety. (Doc. 19, #99–105). The Court disagrees.

Start with the background. Primary jurisdiction becomes an issue when "a claim is properly cognizable in court but contains some issue within the special competence of an administrative agency." *United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997). No "fixed formula" instructs courts on how to apply the primary jurisdiction doctrine. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Rather, courts look to the underlying reasons for such a doctrine—including "the desire for uniformity in adjudication and the belief that the decisionmaker with the most expertise and broadest perspective regarding a statutory or regulatory scheme will

4

be most likely to resolve the issue correctly." *United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 664 (6th Cir. 2000).

The Grocery Stores' problem today is that the FDA has not expressed any "desire for uniformity" on this subject. To date, it has issued no regulations on point. The FDA may well be considering action, as the Motion and the FDA's Closer to Zero Plan suggest, but that is not enough. As another court considering this exact issue noted, the FDA's potential regulations do "not address labeling of baby food products[.]" *In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2023 WL 3493319, at *2 (N.D. Cal. May 3, 2023). That is, they do not go to the manufacturers' duty (if any) to warn consumers, and that is what is at issue here.

Beyond that, the claims here include efforts to recover damages based on the Grocery Stores' *past* conduct, rather than merely declaratory or injunctive relief that would impact their *future* conduct. *Id.* Regulations that are not yet enacted presumably would not have preclusive effect on a claim for damages based on such already-past conduct.

The lack of existing regulation also undercuts the Grocery Stores' argument that kicking this case to the FDA will "advance regulatory uniformity." (Doc. 19, #104–05). That may be true if the FDA promulgates regulations on this subject. But it's been a couple of years so far, and that has not happened.

The Court acknowledges that other district courts have opted out of deciding cases in favor of waiting on the FDA. *In re Beech-Nut Nutrition Co. Baby Food Litig.*, No. 1:21-CV-133, 2023 WL 350818, at *4–5 (N.D.N.Y. Jan. 19, 2023); *In re Gerber*

5

*Prod. Co. Heavy Metals Baby Food Litig.*, No. 121CV269MSNJFA, 2022 WL 10197651, at *14–15 (E.D. Va. Oct. 17, 2022). But this Court finds *In re Plum Baby Food Litigation*'s reasoning more persuasive. True, the FDA's Closer to Zero Plan suggests at least some plan on the FDA's part to address the issue of heavy metals in baby foods nationally. But the FDA announced the plan more than two years ago, and there does not yet appear to be any timeline for a new set of proposed—let alone final—regulations. The results of the plan may well preempt state-law claims like those here. And, of course, any such regulations (or even proposed regulations) may impact the Court's decision on the appropriateness or scope of injunctive relief. But based on what has happened to date, the prudential limitations that the primary jurisdiction doctrine imposes do not persuade the Court to refer this matter to the FDA or otherwise stay further action here.

But while the primary jurisdiction doctrine does not prevent Plaintiffs from pursuing state-law claims, they still must plausibly allege them. And the Grocery Stores contend that Plaintiffs have not done so. Counts I and III (remember, Plaintiffs voluntarily dropped Count II) press common-law claims for breach of implied warranty and unjust enrichment, respectively. (Doc. 19, #105–07). The Grocery Stores claim these counts are defective because Plaintiffs fail to allege which state's law applies. In their opposition to the Motion, Plaintiffs suggest they want Ohio law to apply. (*See* Doc. 21, #173–74). Maybe so, but they need to identify the applicable law in their Complaint, not their briefing. So the proper remedy is to dismiss Counts

6

I and III without prejudice to refiling or amending the Complaint to restate the claim properly under Ohio (or any other state's) law.

Next, both parties make much of a claim that does not yet exist under the Texas Deceptive Trade Practices Act. The Complaint states in Count IV that Plaintiffs "intend to assert a claim" under the TDTPA but notes that there are procedural hurdles they must clear first. (Doc. 1, #19). They say that once they have done so, they "shall amend the Complaint to include this Claim for Relief." (*Id.*). That is all well and good but, as of today, they have not done so. Indeed, in their opposition to dismissal, they even note that it would be "premature to assess the merits of a claim … not yet [] asserted." (Doc. 21, #174). True, Plaintiffs do include some allegations related to a possible claim in the Complaint (*see* Doc. 1, #19–21), and the Grocery Stores spend several pages fighting those allegations (*see* Doc. 19, #107–112). But again, that claim does not yet exist. Accordingly, the Court declines to assess the legal viability of that as-yet-unmade claim.

That leaves Count V and Count VI. Start with the former. There, Hoffman alleges the Grocery Stores violated the Indiana Deceptive Consumer Sales Act. Ind. Code § 24-5-0.5-1 et seq. But a plaintiff advancing an IDCSA claim must first show one of the following: (1) the (allegedly) deceptive act is "incurable"; or (2) certain notice requirements are met. *A.B.C. Home & Real Est. Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986) (citing the statute).

As the Grocery Stores point out, Hoffman never provided notice of her potential claim to the Grocery Stores. (Doc. 19, #113–14). She uses the earlier discussion of a

7

possible Texas claim (on behalf of Barnett and the Texas class) to serve as notice for this Indiana claim. But that cannot suffice. The IDCSA requires "the consumer bringing the action" to provide that notice "in writing to the supplier." Ind. Code § 24-5-0.5-5. Hoffman did not give that notice.

That lack of notice means that, to have a viable IDCSA claim, Hoffman must instead meet the second potential prerequisite: that the deceptive act is "incurable." Ind. Code § 24-5-0.5-2(8). Under the statute, a deceptive act is incurable when "done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." *Id.* That language, of course, is similar to that seen in fraud cases, which ordinarily come with a higher pleading standard. Indiana courts have noted as much. *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998). Because this case is in federal court under the Court's diversity jurisdiction, though, the actual pleading requirements come from federal law, specifically Federal Rule of Civil Procedure 9(b). *Green v. Mason*, 504 F. Supp. 3d 813, 831 (S.D. Ohio 2020). That rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

But in applying that standard here, it is also important to note that Plaintiffs do not allege any actual *acts* of fraud by the Grocery Stores. Instead, they argue that the Grocery Stores' failure to disclose the alleged presence of heavy metals on the product labeling constitutes a fraudulent scheme to conceal that information. This is a fraud by omission. And in cases involving fraud by omission, Rule 9(b)'s pleading standard has some unique contours of its own. Plaintiffs must show the who, what,

when, where, and how of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255 (6th Cir. 2012); *see also Kondash v. Kia Motors Am., Inc.*, No. 1:15-CV-506, 2016 WL 11246421, at *11 (S.D. Ohio June 24, 2016). One way to meet this burden, for example, is to allege "that a manufacturer knew of a defect in its product prior to the plaintiff's purchase and concealed it from consumers." *Yagudayev v. BMW of N. Am., LLC*, No. CV 20-897, 2020 WL 6689799, at *8 (D.N.J. Nov. 13, 2020).

This is where Plaintiffs run into another roadblock. They never allege that any of the Grocery Stores knew (or had any reason to know) of the allegedly-unsafe quantities of heavy metals. Nor do they identify anyone who should have remedied the omission outside of—apparently—the companies in their entirety. That falls short of what Rule 9(b) requires.

Not only is the failure to plead such knowledge a pleading defect, it is also a substantive defect under Indiana law. The IDCSA requires that the deceptive act be done "with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(8); *McKinney*, 693 N.E.2d at 67–68. When the fraud is an omission, showing intent to defraud would necessarily seem to entail knowledge. After all, if a person does not know a given fact, how could their failure to disclose it be an intentional effort to mislead? So, even putting Rule 9(b) aside and relying on Rule 8's "plausibility" standard to get past this stage, Plaintiffs would need some specific allegation making it at least plausible that someone at the Grocery Stores knew of this labeling omission and intended to mislead

9

Plaintiffs. Yet there is no such allegation is in the Complaint. Adding in Rule 9(b)'s heightened pleading standard just make that problem worse.

That said, like the other claims here, if Plaintiffs wish to amend the Complaint (as their response indicates they may, *see* Doc. 21, #176), they should seek leave in a separate filing with the Court. For now, though, the Court will dismiss this claim too.

Finally, in Count VI, Plaintiff Lovincey alleges the Grocery Stores violated the Washington Consumer Protection Act. (Doc. 1, #24–25). Defendants want the Court to dismiss this claim because they believe that Plaintiffs have not established the existence of any deceptive acts or adequately alleged any injury, both of which are necessary elements for a WCPA claim. (Doc. 19, #116).

In general the WCPA requires (1) an unfair or deceptive act or practice; (2) that the complained-of act occurred during the conduct of trade or commerce; (3) some impact to the public interest; (4) injury to a plaintiff's business or property; and (5) that the unlawful act caused that injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785–93 (1986). Failure to establish any one of these elements is fatal. *Id.* at 795.

The Grocery Stores argue that for the same reason Plaintiffs' Indiana claim fails, so does this one—they believe Plaintiffs have not identified an unfair or deceptive act. (Doc. 19, #115–16). But as the Grocery Stores themselves note, Washington courts have found "a representation, omission, or practice that is likely to mislead a reasonable consumer" sufficient to show a deceptive act. *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 895 (2009) (citation omitted). On

Plaintiffs' version of the facts, the Grocery Stores omitted relevant information about heavy metals from warning labels. That is enough at this stage. Eventual discovery may reveal facts that point to a different conclusion, but Plaintiffs have met their pleading burden on this element.

When Plaintiffs run into problems on this claim, however, is with the fourth element—injury to property. Personal injuries do not suffice to raise a claim under the WCPA, which also means that alleged injuries in the form of emotional distress or pain and suffering don't cut it. *White River Estates v. Hiltbruner*, 953 P.2d 796, 797 n.1 (Wash. 1998). Rather, as the statute says, Plaintiffs must show injury to *property*. And, in the Court's view, Lovincey has not plausibly alleged such injury. She has only demonstrated that she bought the product and fed it to her children. Plaintiffs have not alleged any resulting ill effects and, even if they had, that is not injury to "property."

Perhaps the closest Plaintiffs come to alleging an injury to property is when they assert that the Grocery Stores' omissions about the presence of heavy metals made the product worthless. (Doc. 1, #20–21, 22, 25). Even still, the Court struggles to see how the product was *worthless* to them. Again, Plaintiffs ostensibly bought the wafers and served them to their children, who suffered no ill effects. They appear to have gotten their money's worth, even if they *now* wish they had not bought the products in the first place. And nothing in the Complaint indicates that the Plaintiffs bought these products for resale, or indeed that any Plaintiff currently possesses any of the unconsumed products. So even if the products are now valueless, Plaintiffs

11

have not shown how that change in value could have possibly harmed them. Plaintiffs' WCPA claim thus cannot proceed without showing an injury to property and must also be dismissed.[2]

## CONCLUSION

Put together, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 19) in full. The Court **DISMISSES** the Complaint (Doc. 1) **WITHOUT PREJUDICE**. If Plaintiffs desire to amend the Complaint to clarify their allegations (as conveyed in their response to Defendants' motion (Doc. 21)), they may seek leave from the Court to do so in a separate filing within twenty-one days of entry of this Order.

**SO ORDERED.**

September 11, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[2] Beyond the arguments above, the Grocery Stores also claim that Plaintiffs lack standing, and in particular that they have failed to allege an injury in fact. Because the Court is dismissing the Complaint in full, it does not reach that issue. If Plaintiffs seek leave to file an Amended Complaint, though, they should include whatever allegations they have with regard to the injuries they allegedly suffered. Such allegations are important, not only as to the "injury to property" requirement for the WCPA claim, but also to standing more generally.