**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**TASHEBA BARNETT,** *et al.***,**

    **Plaintiffs,**

    v.

**THE KROGER COMPANY,** *et al.***,**

    **Defendants.**

Case No. 1:22-cv-544

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiffs Tasheba Barnett, Adele Hoffman, and Chadaela Lovincey allege that two grocery stores, The Kroger Co. and Fred Meyer, Inc. (the Grocery Stores), sold rice-rusk teething wafers that contained elevated levels of toxic metals. Plaintiffs regularly purchased these snacks for their young children but maintain that they would not have done so had they known the wafers contained toxic metals. So they sued the Grocery Stores on behalf of themselves and a putative class, bringing various common law claims and State-specific (Texas, Indiana, and Washington) consumer protection claims. (Compl., Doc. 1). The Grocery Stores moved to dismiss Plaintiffs' original Complaint arguing that they lacked standing, failed to specify which State's law applied to their common law claims, and failed to state a claim under any of the cited Texas, Indiana, and Washington laws. (Doc. 19). The Court granted that motion and dismissed Plaintiffs' original Complaint but also granted them leave to amend to address the identified deficiencies. (Doc. 25). Plaintiffs amended their Complaint, (Doc. 28), and the Grocery Stores once again moved to dismiss, (Doc. 31). For the

reasons that follow, the Court **DENIES** the Motion to Dismiss Amended Complaint, (Doc. 31) but does so without prejudice to the Grocery Stores' right to reraise their attack on the plausibility of Plaintiffs' unjust enrichment and breach-of-implied-warranty claims, as further described below.

## BACKGROUND

The facts here are straightforward. Plaintiffs allege that "Simple Truth Organic Rice Rusks Baby Teething Wafers" contain elevated levels of arsenic, cadmium, lead, and mercury. (Doc. 28 ¶ 50, #353). These levels allegedly exceed what the Food and Drug Administration (FDA) considers safe levels when present in adult drinking water. (*See id.* ¶¶ 42–46, #350–51).[1] The packaging for these teething wafers states that they are "high quality," the "perfect snack for tiny tummies," and "safe and recommended for children '6+ months.'" (*Id.* ¶ 52, #353–54). Plaintiffs regularly purchased the teething wafers and fed them to their young children. (*Id.* ¶¶ 58, 61, 64, #354–56). They allege that they would not have purchased the teething wafers if they had known that they contained elevated levels of toxic heavy metals. (*Id.* ¶¶ 60, 63, 66, #355–56).

After learning that the teething wafers contained heavy metals, Plaintiffs filed this lawsuit on behalf of themselves and a putative class. (Doc. 1). Plaintiffs initially brought six claims: (1) a common law breach-of-implied-warranty claim (asserted on behalf of all Plaintiffs and a nationwide class); (2) a Magnuson-Moss Warranty Act

---

[1] According to the out-of-context screenshot of the results of an independent lab study found in Plaintiffs' Amended Complaint, the levels of mercury were within allowable FDA limits. (*See* Doc. 28 ¶¶ 46, 50, #351, 353).

2

claim (which they voluntarily dismissed); (3) an unjust enrichment claim (on behalf of Plaintiffs and a nationwide class); (4) a claim under Texas's Deceptive Trade Practices and Consumer Protection Act (TDTPA) (on behalf of Barnett and a Texas subclass); (5) a claim under Indiana's Deceptive Consumer Sales Act (IDCSA) (on behalf of Hoffman and an Indiana subclass); and (6) a claim under Washington's Consumer Protection Act (WCPA) (on behalf of Lovincey and a Washington subclass). (*Id.* at #16–25).

The Grocery Stores asked the Court to dismiss Plaintiffs original Complaint, raising four arguments: (1) the Plaintiffs lacked standing; (2) the FDA possessed primary jurisdiction over food safety standards; (3) Plaintiffs failed to state plausible common law claims because they failed to specify which State's law applied to the claims; and (4) Plaintiffs failed to state plausible claims under the State-specific consumer protection laws. (Doc. 19, #96–117).

The Court rejected the argument that it should avoid adjudicating Plaintiffs' claims based on the primary jurisdiction doctrine. (Doc. 25, #281–83). But the Court agreed with the Grocery Stores' third and fourth arguments and dismissed the Plaintiffs' claims without prejudice on that basis. (*Id.* at #283–89). And because the Court dismissal without prejudice is also the result that would have followed from a lack of standing, the Court did not consider the standing argument (although the Court did note that Plaintiffs should include in any amended complaint all of their allegations relating to that topic). (*Id.* at #289 n.2).

3

Plaintiffs amended their Complaint in an attempt to cure the deficiencies that had led to dismissal. (Doc. 28). The Grocery Stores once again move to dismiss, though, raising the same four arguments from the prior motion and arguing that Plaintiffs' amendments failed to address the original Complaint's shortcomings. (*See generally* Doc. 31). Plaintiffs responded, (Doc. 34), and the Grocery Stores replied, (Doc. 37). The motion is ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

A defendant can challenge a plaintiff's Article III standing either facially or factually. *See Crawford v. Lawrence*, No. 1:23-cv-192, 2024 WL 169110, at *3 (S.D. Ohio Jan. 16, 2024). A facial challenge merely "questions the sufficiency of the pleading," whereas a factual challenge relies on materials outside the pleadings. *Id.* (cleaned up). When a defendant challenges the sufficiency of the pleadings, the pleading need allege only sufficient factual matter as is needed plausibly to support Article III's standing requirements. *See TransUnion LLC v. Ramirez*, 594 U.S. 413,

4

431 (2021) ("A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation." (cleaned up)).

At the motion-to-dismiss stage, in assessing plausibility both as to the merits and as to standing (when a facial challenge is brought), the Court accepts the facts of the complaint as true. *Iqbal*, 556 U.S. at 678; *Crawford*, 2024 WL 169110, at *3. The Court must also "draw all reasonable inferences" in favor of the plaintiffs. *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016). But that does not mean the Court must take everything Plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up).

## LAW AND ANALYSIS

The Court begins with evaluating whether Plaintiffs have adequately alleged an injury in fact, such that the Court has subject-matter jurisdiction over this action. Concluding that they have, the Court then addresses the Grocery Stores' merits-based arguments.

**A.     Plaintiffs Have Standing**

In its previous Opinion, the Court declined to reach the standing issue. But on this second go-round, the Court concludes that it must. Standing is jurisdictional, and thus goes towards the Court's power to hear the case at all. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 103–04 (1998).

Article III § 2 of the Constitution limits a federal court's jurisdiction to "cases" and "controversies." A plaintiff's standing to sue is one element of this constitutional

5

threshold. *TransUnion*, 594 U.S. at 423. To demonstrate standing, a plaintiff must show: (1) that she suffered a concrete, particularized, and actual or imminent injury; (2) that the injury is traceable to the defendant's conduct; and (3) that a favorable ruling would redress that injury. *Id.* An injury is "concrete," and therefore cognizable under Article III, when it is a type of injury that bears a "close relationship" to a harm traditionally recognized at common law. *Id.* at 425. Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim they press and for each form of relief they seek." *Id.* at 431.

Plaintiffs maintain that they suffered an injury in fact in the form of an economic harm—namely, they purchased a product in reliance on the Grocery Stores' (mis)representations and would not have purchased the product had they known those representations to be false. (Doc. 34, #465). The Court agrees that this constitutes a concrete and particularized injury for Article III purposes, as Plaintiffs plausibly state an injury in fact that bears a "close relationship" to a harm traditionally recognized at common law. *TransUnion*, 594 U.S. at 425.

At common law, a plaintiff could maintain an action for fraudulent inducement where the defendant was "induced to make a contract of purchase by the fraudulent misrepresentations of his vendor." *Wilson v. New U.S. Cattle-Ranch Co.*, 73 F. 994, 997 (8th Cir. 1896). In those cases, the plaintiff could rescind the contract or affirm the contract and seek damages. *Id.*; *Nat'l Bank & Loan Co. v. Petrie*, 189 U.S. 423, 425 (1903). And in an action for rescission, "the measure of damages is the consideration paid." *Wilson*, 73 F. at 997; *see Smith v. Bolles*, 132 U.S. 125, 129–30

6

(1889) (where plaintiff was fraudulently induced to buy securities, the measure of damages "was not the difference between the contract price and the reasonable market value if the property had been as represented to be," but rather "[w]hat the plaintiff paid for the stock").

Although modern commercial transactions typically involve fewer person-to-person negotiations than those in the founding era, some courts of appeals have recognized that misrepresentations in advertising give rise to analogous (and thus cognizable) legal injuries where the plaintiff would not have purchased the product but for the misrepresentation. In *In re Evenflo Co., Marketing, Sales Practices & Products Liability Litigation*, a class of parents sued a car seat manufacturer alleging that its booster seat—which was advertised as safe for children as small as thirty pounds—was unsafe for children under forty pounds. 54 F.4th 28, 32–33 (1st Cir. 2022). Much like here, the defendant argued that the parents lacked standing because (1) they were not physically injured by the product and (2) to the extent the parents asserted an economic injury, they did not plausibly allege they spent more money than they otherwise would have. *Id.* at 35, 39. The First Circuit rejected both arguments. The court held that the parents' injury was *economic*, not physical, and that the economic injury stemmed from the defendant's misrepresentations. *Id.* at 35–39. As to the plausibility of the economic injury, the court held that the parents had asserted a cognizable injury because they alleged that they *would not have bought the booster seat* had they known of the misrepresentation. *Id.* at 39–40. The Ninth Circuit has followed the same rule. *Reid v. Johnson & Johnson*, 780 F.3d 952,

7

958 (9th Cir. 2015) (holding that, in false advertising cases, plaintiffs plausibly allege an Article III injury if they show that, in reliance on a misrepresentation, they "paid more for a product than they otherwise would have paid, *or bought it when they otherwise would not have done so*" (cleaned up) (emphasis added)).

Other courts of appeals (including the Sixth Circuit) have likewise held that a seller's misrepresentations give rise to cognizable economic injuries, albeit relying on a different theory for how that injury is quantified. *See Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 577–78, 581 (6th Cir. 2013) (holding that plaintiffs suffered an injury in fact because they paid a price premium for a product in reliance on a misrepresentation); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 734–37 (2d Cir. 2017) (same). Specifically, in those cases, the harm arose from paying a premium price as a result of the misrepresentation. But while such "price premium cases" describe the specific harm differently from the cases in which the plaintiffs allege that they would not have bought the product at all, the underlying theories are compatible with one another. Paying a price premium is no doubt one form of economic injury, but so is a fraudulently induced purchase in the first place. And the cause of the injury is the same in both sets of cases—reliance on a seller's misrepresentation that was intended to induce a sale.[2] So the Court finds that the alleged harm works for standing purposes.

---

[2] The Court further notes that while *Loreto* held that a price premium injury was *sufficient* to establish standing, it nowhere suggested that a price premium injury was *required* in all misrepresentation cases. This Court simply takes *Loreto*'s basic premise—that reliance on misrepresentations can create a cognizable economic injury—and applies it to a distinct yet similar situation where the common law would also provide a remedy.

8

In terms of plausibly establishing a misrepresentation that caused that harm, Plaintiffs allege that the Grocery Stores represented that the teething wafers were "high quality," a "perfect snack for tiny tummies," and "safe and recommended for children '6+ months.'"[3] (Doc. 28 ¶ 52, #353–54). Plaintiffs now allege (1) those representations are false because the Grocery Stores knew the product contains elevated levels of toxic metals, and (2) that Plaintiffs would not have purchased the product had they known of this falsity. (*See id.* ¶¶ 42–46, 60, 63, 66, #350–51, 355–56). This injury—relying on false representations intended to induce a sale—is analogous to the injury that would lie at common law for the fraudulent inducement to enter a contract. After all, every purchase the Plaintiffs made *was* contractual—it just lacked active negotiation of the terms.

The Grocery Stores raise three counterarguments challenging the facial sufficiency of the Amended Complaint. All fail to persuade. The Grocery Stores first argue that Plaintiffs fail to state an injury because the teething wafers have not caused present physical injury to them or their children. (Doc. 31, #391–92). But suffering a physical injury from a defective product is not the only way a purchaser can assert a cognizable injury. *Evenflo*, 54 F.4th at 35–39. Indeed, Plaintiffs do not argue that the teething wafers have caused physical injury, nor do they argue that their fear of future health effects is an injury in fact. Rather Plaintiffs argue that

---

[3] From the Court's view of the teething wafers' packaging, it does not spell out "safe and recommended for children" but it does include a banner that simply reads "6+ months." (*See* Doc. 28, #353). Under the totality of the circumstances and given the Court's obligation to "draw all reasonable inferences in favor" of Plaintiffs, *see Courtright*, 839 F.3d at 520, the Court agrees that the reasonable reading of the banner is that the packaging is representing that the wafers are "safe and recommended" for children six months or older.

9

their reliance on the Grocery Stores' alleged misrepresentations worked an *economic* injury—causing them to purchase a product they otherwise would not have purchased. (Doc. 34, #465–66).

The Grocery Stores' second argument is similar to the first. They argue that Plaintiffs' "subjective belief that a consumable product is worthless after they purchased and used the product as intended" does not qualify as an injury in fact. (Doc. 37, #565). The Grocery Stores emphasize that Plaintiffs "have not alleged that their children could not digest the Products, that the Products made their children ill, that the Products did not dissolve as advertised, caused their children to choke or otherwise failed to perform as expected." (*Id.*). In other words, they argue that, because the teething wafers were merchantable, Plaintiffs were not injured. But that argument proves too much. True, one way to establish an economic injury is for a party to allege they purchased a product that is not merchantable. Someone who buys an unmerchantable product has suffered an injury—even if the seller made no representations about the product—simply because the product sold did not conform to its nature or intended use. But that is not the only way. And here Plaintiffs link their injury to *false, affirmative representations* by the Grocery Stores intended to induce sales, which for the reasons noted above, is another way to show injury.

Stated more broadly, a defective-product theory, unattached from any representations, is distinct from a fraudulent-inducement theory that relies on the falsity of a representation intended to induce a sale. The Grocery Stores' legal

10

authority, while also distinguishable on other grounds,[4] fails to consider this distinction. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283, 288 (3d Cir. 2018) (stating that under a benefit-of-the-bargain theory plaintiff received an "economic benefit worth … what she paid" because the baby powder "eliminated friction on the skin, absorbed excess moisture, and maintained freshness");[5] *In re Fruit Juice Prod. Mktg. and Sales Prac. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are unable to show that *any* harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance. … Plaintiffs paid for fruit juice, and they received fruit juice.") *Aleisa v. GOJO Indus., Inc.*, 538 F. Supp. 3d 764, 773 (N.D. Ohio 2021) ("[T]hey received the benefit of the bargain and may not transform what would be a contract dispute (*if Plaintiffs had a contract with Defendant*) into a consumer class action." (emphasis added)). And that distinction matters here because Plaintiffs maintain that the Grocery Stores misrepresented the nature of their product and that their misrepresentation induced the sale of that product. That type of injury has common law roots and is cognizable under Article III.

---

[4] *See Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (plaintiff failed to establish falsity of the representation and therefore simply alleged an idiosyncratic subjective fear of harm); *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 224 (D.N.J. 2022) (plaintiff did not point to a specific misrepresentation); *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269, 2022 WL 10197651, at *2 (E.D. Va. Oct. 17, 2022) (plaintiffs alleged defendant negligently failed to disclose defect, rather than affirmatively representing quality of product); *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051, 2015 WL 1440466, at *4 (E.D. Cal. Mar. 27, 2015) (plaintiff failed to allege actual reliance on purported misrepresentation).

[5] Many of the cases the Grocery Stores cite rely explicitly on *In re Johnson & Johnson*'s flawed logic limiting economic-based injuries to defects that make the product unmerchantable. *See Kimca v. Sprout Foods, Inc.*, No. CV 21-12977, 2022 WL 1213488, at *9 (D.N.J. Apr. 25, 2022); *Plum*, 637 F. Supp. 3d at 223–24.

The Grocery Stores' third argument is that if Plaintiffs' economic injury stems from some premium they paid for the teething wafers, then Plaintiffs must allege, with specificity, an alternative non-premium product they would have purchased had they known the teething wafers contained toxic metals. (Doc. 37, #566–67). But Plaintiffs here are not relying on a "premium price" theory, so they need not allege that they would have purchased an alternative non-premium product. *See Evenflo*, 54 F.4th at 39–40. Rather they need allege only that they would not have purchased *this* product at all, which is exactly what they do. (*See* Doc. 28 ¶¶ 60, 63, 66, #355–56).

In sum, Plaintiffs have adequately alleged an injury in fact which bears a "close relationship" to an injury recognized at common law. *TransUnion*, 594 U.S. at 425. They therefore have standing to pursue monetary damages.[6]

A few caveats bear mention. First, the Court's holding does not give carte blanche to plaintiffs suffering buyer's remorse. An individual's retrospective dissatisfaction with a product is not by itself an injury when that dissatisfaction is divorced from product warranties, representations, defects, or other problems. Second, the common law tradition underlying an action for fraudulent inducement

---

[6] Plaintiffs also seek injunctive relief against the Grocery Stores to prohibit them from "engaging in the wrongful and unlawful conduct alleged herein." (Doc. 28, #369). They argue this relief is to prevent future health problems and physical injury caused by the teething wafers. (Doc. 34, #466 n.10). The Grocery Stores argue that Plaintiffs lack standing to pursue injunctive relief because, even assuming Plaintiffs' children will develop health problems from the toxic metals, that harm (which is limited to the named Plaintiffs' children and not any putative class) will not be redressed by any injunctive relief because the children have already consumed the product. (Doc. 37, #568–69). The Grocery Stores are correct on this point. Plaintiffs lack standing to pursue injunctive relief. *Evenflo*, 54 F.4th at 41; *Rikos v. Procter & Gamble, Co.*, 782 F. Supp. 2d 522, 531–32 (S.D. Ohio 2011).

historically required actual reliance on the counterparty's representation. *See McHose v. Earnshaw*, 55 F. 584, 586 (3d Cir. 1893) ("When you have proved that the statement was false, you must further show that the plaintiff has acted upon it, and has sustained damage by so doing." (citation omitted)). A plaintiff may not establish standing by finding some ancillary misrepresentation which had no sway on her decision to contract and then claiming she was fraudulently induced. Third, at the motion-to-dismiss stage, allegations of standing, like substantive allegations going to the merits of the plaintiffs' claims, must be plausible. *See Iqbal*, 556 U.S. at 678; *TransUnion*, 594 U.S. at 431. Conclusory allegations that a product is not "safe" simply on a plaintiff's say-so will not do. In sum, a plaintiff must allege facts that plausibly demonstrate both that a representation is false *and* that she relied on it. With those caveats, the Court proceeds to the merits.[7]

## B. Common Law Claims

In the Court's first Opinion and Order dismissing Plaintiffs' claims, the Court dismissed Plaintiffs' common law unjust enrichment and breach of implied warranty claims because they failed to allege which state's law applied to their claims. (Doc. 25, #283–84). When Plaintiffs amended their complaint, they cured that defect and specifically alleged that Ohio common law would apply to those claims. (Doc. 28, #356–59). Plaintiffs' amendments then led the Grocery Stores to argue that the Court

---

[7] The Grocery Stores present one more non-merits argument for dismissal—that the Court should eschew jurisdiction over the case because it requires resolution of issues within the FDA's expertise. (Doc. 31, #397–98). The Grocery Stores concede that the Court rejected this argument in its first Opinion and Order dismissing Plaintiffs' claims and seek only to preserve this issue for the record. (Doc. 37, #569 n.3). The Court rejects the argument for the same reasons it did before. (*See* Doc. 25, #281–83).

should dismiss the claims yet again because Ohio law cannot apply to Plaintiffs who reside in Texas, Indiana, and Washington. (Doc. 31, #398–99).

Upon further reflection, the Court concludes it was mistaken in originally dismissing Plaintiffs' claims for failing to specify in their Complaint the applicable state's law. That is because choice-of-law questions are legal questions to be briefed by opposing parties and decided by the Court. In other words, while choice of law is an issue the Court may need to address in resolving a motion to dismiss, it is not a pleading requirement. *Mirza v. Ignite USA, LLC*, 439 F. Supp. 3d 1058, 1066, 1067 n.4 (N.D. Ill. 2020).

The reason it may be relevant to deciding a motion to dismiss, though, is that the choice of law may inform whether a plaintiff has plausibly alleged a claim. Assume that for a given tort, State A requires elements *a*, *b*, and *c*, whereas State B requires elements *a*, *b*, *d*, and *f*. If State B law applies, then a complaint alleging facts plausibly establishing *a*, *b*, and *c* won't cut it. But, as suggested above, the way that issue should arise is by way of the motion to dismiss briefing. In the instant hypothetical, for example, the defendant presumably would argue in such briefing that State B's law applies and that the plaintiff has failed to allege a plausible claim for relief under that law. The plaintiff then would presumably respond by arguing either that State A's law should apply or that State B's law does not in fact require *a*, *b*, *d*, and *f*, or some combination thereof.

So how should that all work out here? Recognizing that the Court's original ruling—which turned choice of law into a pleading requirement—caused the current

14

quandary, the Court will **DENY** the motion insofar as it seeks dismissal of Plaintiffs' common law claims. But such denial will not prejudice the Grocery Stores' again seeking dismissal of these two common law claims (but only these claims) via supplemental briefing that addresses both what state's (or states') law should apply to the common-law claims here and why, under such choice of law (or any alternative choice of law that may apply), Plaintiffs' common law claims are implausible. Plaintiffs will then have an opportunity to respond as to what law they believe applies to their claims and why, under *their* asserted choice of law (or any alternative choice of law), their claims are plausible. This will allow the Court to assess whether Plaintiffs have failed to allege plausible common law claims for relief under the correct pleading standards.

To be clear, though, the parties' arguments on the choice-of-law issues may carry implications for later stages of this litigation, and in particular class certification. If, for example, the Grocery Stores were to argue that the same state's law applies to all of the common law claims by any of the named plaintiffs, that may make it easier for Plaintiffs to establish commonality down the road. Conversely, if the Plaintiffs were to argue that different states' laws apply depending on plaintiff-specific issues (e.g., where a given plaintiff resides), that may resurface in considering commonality, as well. But for now, the only question is one of plausibility. And to answer that question, the Court must first know the standard against which to assess the claims raised (i.e., which state's or states' law applies).

**C.     Texas Deceptive Trade Practices and Consumer Protection Act**

Plaintiff Barnett alleges that the Grocery Stores violated the TDTPA, Tex. Bus. & Com. Code §§ 17.41, *et seq.* (Doc. 28, #359–62). Under the TDTPA, a consumer may maintain an action against one who causes economic damage using a "false, misleading, or deceptive act or practice" specifically enumerated in the act. Tex. Bus. & Com. Code § 17.50(a)(1). One of those specifically enumerated unlawful acts or practices is "representing that goods or services are of a particular standard, quality, or grade … if they are of another." *Id.* § 17.46(b)(7).

The Grocery Stores ask the Court to dismiss this claim because, according to them, the teething wafers were safe, which means that the Grocery Stores did not "represent[] that the Product had a characteristic or quality that it did not actually have." (Doc. 37, #574). In support of this, they note that Plaintiff Barnett "did not allege that her child became ill, choked on the Product, could not digest the Product, or otherwise suffered any adverse health consequence from ingesting the Product." (*Id.*). While that is true, it misses the point. Plaintiff Barnett *does* argue that the wafers contained elevated levels of toxic metals—levels which the FDA considers unsafe in drinking water. (Doc. 28 ¶¶ 42–46, 50, #350–51, 353). At the motion-to-dismiss stage, the Court is required to accept this allegation as true. *Iqbal*, 556 U.S. at 678. And that allegation makes it at least *plausible* that the Product is unsafe. The Grocery Stores' contrary argument that a product cannot be unsafe unless and until it actually injures someone is just wrong. Safety deals with the *risk* of harm, not certainty. If a driver speeds 100 miles per hour down a crowded interstate and avoids a crash, was his driving safe? Of course not. Just because harm did not befall him

16

does not mean that his manifestly *unsafe* actions were safe. So too here. Plaintiff Barnett plausibly alleges, based on FDA standards, that the teething wafers are unsafe because they contain elevated toxic metals, which in turn plausibly alleges that the Grocery Stores misrepresented an aspect of the Product. That her child has not yet experienced negative health effects does not change that fact.

The Court finds, for the purposes of the motion-to-dismiss stage, that Plaintiff Barnett has plausibly alleged a violation of the TDTPA. Because the Court finds that Plaintiff Barnett has plausibly alleged a specific violation under § 17.46(b)(7), it need not evaluate whether the Grocery Stores have engaged in any other deceptive act specifically enumerated in § 17.46(b).

**D.     Indiana Deceptive Consumer Sales Act**

Plaintiff Hoffman alleges that the Grocery Stores violated the IDCSA, Ind. Code §§ 24-5-0.5-1, *et seq.* (Doc. 28, #362–67). The IDCSA prohibits any "supplier" from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." *Id.* § 24-5-0.5-3(a). But to bring an action under the IDCSA, a consumer must allege that the deception is "uncured or incurable." *Id.* § 24-5-0.5-4(a). A deceptive act is incurable (the only basis by which Plaintiff Hoffman seeks to proceed with this claim, (*see* Doc. 34, #475–78)) if it is undertaken by a supplier "as part of a scheme, artifice, or device with intent to defraud or mislead." *Id.* § 24-5-0.5-2(a)(8).

In the Court's first Opinion and Order dismissing this claim, the Court held that Plaintiff Hoffman had not alleged any acts of fraud that could support a finding

17

of an incurable deceptive act. (Doc. 25, #285–87). The Court explained that Plaintiff Hoffman never alleged that the Grocery Stores knew or had reason to know of the allegedly unsafe levels of toxic metals. (*Id.* at #286).

Plaintiffs' Amended Complaint fixes that problem. Plaintiff Hoffman alleges that the Grocery Stores knew of the toxic metals because they were "in a position to know through their internal quality control and product safety personnel." (Doc. 28 ¶ 53, #354). She further alleges that the products supplier regularly conducted testing which demonstrated elevated toxic metal levels and that the Grocery Stores either possessed the tests or had access to them. (*Id.*). Lastly, the she alleges that even if the Grocery Stores did not have actual knowledge through those means, that they at least knew that heavy metals were in many baby food products after the U.S. House of Representatives Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform released its February 4, 2021, comprehensive report detailing how many baby food manufacturers knowingly concealed dangerous levels of contamination in their baby food products. (*Id.* ¶¶ 40, 56, #349, 354). She maintains that the Grocery Stores fraudulently concealed this fact because they knew that customers trust the quality of their products and that customers wish to purchase baby food without toxins and contaminants and yet failed to disclose the presence of the metals. (*Id.* ¶¶ 117–18, #363–64).

The Court finds that the Plaintiff Hoffman has plausibly alleged (both under Federal Rule of Civil Procedure 9(b) and the IDCSA) that the Grocery Stores fraudulently misrepresented the nature of their product. *See U.S. ex rel. SNAPP, Inc.*

18

*v. Ford Motor Co.*, 532 F.3d 496, 503–04 (6th Cir. 2008). She does not nakedly assert that the Grocery Stores knew of the toxic metals without any additional support. She alleges three specific ways (internal quality control, product supplier tests, and the U.S. House Subcommittee report) by which the Grocery Stores knew or should have known of the toxic metals in their product. And her allegations that the Grocery Stores were aware that their customer base desires safe, non-toxic food are plausible.

The Grocery Stores claim that Plaintiff Hoffman's allegations do not meet the necessary threshold because they lack too many details. (Doc. 31, #403–04). They argue, for example, that she does not identify the product supplier, or the specific tests conducted, or that the Grocery Stores conclusively possessed those tests. (*Id.*). But that asks too much. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 506 (6th Cir. 2007). True, in order ultimately to prevail, Plaintiffs will need to prove their allegations: through discovery at a later stage of litigation. But for present purposes the allegations are specific enough to meet Rule 9's heightened pleading standard and support the plausibility of the IDCSA claim. Plaintiff Hoffman's IDCSA claim can proceed.

E.   **Washington Consumer Protection Act**

Plaintiff Lovincey alleges that the Grocery Stores violated the WCPA, Wash. Rev. Code §§ 19.86.010, *et seq.* (Doc. 28, #367–69). The WCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020. To state a claim under the WCPA, a plaintiff must allege that the defendant's unfair or deceptive act or practice injured her "business or property."

19

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 539 (Wash. 1986) (en banc) (citing Wash. Rev. Code § 19.86.090).

The Grocery Stores argue that Plaintiff Lovincey has failed to allege an injury to property for the same reason she purportedly lacks standing—she has suffered no economic injury. (Doc. 31, #404–05). But the Court has already held that Plaintiffs suffered an injury to property in holding that they have standing to sue. Plaintiffs were allegedly induced to purchase a product by the Grocery Stores' alleged misrepresentations. Plaintiff Lovincey has therefore alleged an injury to property and has plausibly stated a claim under the WCPA.

## CONCLUSION

For the reasons stated, the Court **DENIES** the Grocery Stores' Motion to Dismiss Amended Complaint (Doc. 31). The Court reiterates that this denial is without prejudice to Defendants' reraising its challenge to the common law claims so long as they address the issues this Opinion and Order specifically identified above.

**SO ORDERED.**

May 8, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**